## IN THE COURT OF APPEALS OF TENNESSEE,
## AT NASHVILLE

_____

**FILED**

**November 6, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **DAN W. WILKINS,** | ) | Davidson County Circuit Court |
| | ) | No. 94C-3634 |
| Plaintiff/Appellant. | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **FRANCES WILKINS,** | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| VS. | ) | C.A. No. 01A01-9707-CV-00299 |
| | ) | |
| **DODSON, PARKER, SHIPLEY, BEHM** | ) | |
| **& SEABORG, A partnership, and** | ) | |
| **HARLAN DODSON, III, PAUL S.** | ) | |
| **PARKER, MARIETTA L. SHIPLEY**, | ) | |
| **MARGARET BEHM, and JON P.** | ) | |
| **SEABORG, Individually**, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

_____

From the Circuit Court of Davidson County at Nashville.
**Honorable Donald P. Harris, Judge**

**Dan W. Wilkins,** Pro Se

**Winston S. Evans**,
**Dennis J. Meaker**,
EVANS, JONES & REYNOLDS, Nashville, Tennessee
Attorneys for Defendants/Appellees.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

This is a legal malpractice case. The malpractice action arose out of a lender liability lawsuit that was dismissed by the trial court because it had not been filed within the limitations period. Dismissal of the underlying lawsuit was affirmed on appeal by the Middle Section of this Court. *Wilkins v. Third National Bank in Nashville*, 884 S.W.2d 758 (Tenn. App. 1994), *cert. denied*, (Sept. 26, 1994). While not in the record before us, the facts of the underlying lawsuit contained in the aforementioned decision of the Middle Section will be helpful in understanding the facts of this appeal.

In 1978, Dan W. Wilkins (hereinafter, "Wilkins") opened a restaurant in Chattanooga, Tennessee, which he operated until 1981 when he sold the business to a Dr. Carpentier. After the sale, Wilkins remained liable on the restaurant's lease and continued as individual guarantor of a loan made to the restaurant by the Third National Bank (hereinafter, "Third National" or "Bank"). Carpentier operated the restaurant until 1985, when it was closed due to financial difficulties. Wilkins subsequently took over the restaurant because he remained liable on both the debt to Third National and the original lease. Wilkins also incorporated "Dorothy W., Inc." (hereinafter, "DWI") for the purpose of operating the restaurant.

By two separate loans, Third National Bank loaned DWI a total of $330,000 to renovate the restaurant facility and get the restaurant open and operating. Both loans were due and payable on June 1, 1986. The restaurant reopened in April, 1986. In the Spring of 1986, Wilkins and DWI requested that the Bank loan the enterprise an additional $800,000 for a total loan balance of $1,130,000 in order to consolidate the existing loans and to provide additional working capital. Third National declined to make the loan, and referred the existing loans of Wilkins and DWI to its special assets division which specialized in collecting problem loans.

Various negotiations took place between Wilkins, DWI and the Bank. Ultimately, the notes came due on June 1, 1986. When Wilkins and DWI did not pay the notes, Third National Bank notified Wilkins on June 12, 1986, that both his personal loans and his business loans were delinquent.

On July 16, 1986, Wilkins met with a representative of Third National to discuss the request for additional financing. Wilkins and the Bank reached a tentative agreement whereby the

Bank would extend Wilkins' and DWI's existing loans for ten years if Wilkins would satisfy three conditions: (1) secure a loan commitment for at least $450,000 from another lender; (2) secure $150,000 in financing for new equipment; and (3) obtain a ten-year extension on the lease for the restaurant premises.

Within ten days after the agreement was reached, and in any case before July 31, 1986, Wilkins informed Third National that he had obtained $350,000 in financing from Union Planters Bank (hereinafter, "Union Planters") and that he had satisfied the other conditions under the parties' agreement. Third National canceled the whole deal and suggested that Wilkins have Union Planters assume Third National's loans. When informed of Third National's reaction and proposal, Union Planters withdrew its approval for the $350,000 loan. Wilkins then informed Third National's representative that Union Planters had withdrawn its financing. From that time on, Third National unequivocally refused to make any additional loans to Wilkins and never indicated a willingness to alter its position. Ultimately, DWI filed for bankruptcy protection, and on August 18, 1986, Third National called due all outstanding loans it had made to DWI and Wilkins.

On August 16, 1989, Wilkins and DWI sued Third National Bank in the Circuit Court of Hamilton County, alleging that the bank had breached its agreement to finance the restaurant project. Wilkins was represented at that time by Jon Seaborg and the law firm of Dodson, Parker, Shipley, Behm & Seaborg, the appellees in the present appeal. The Hamilton County lawsuit was dismissed for improper venue in June, 1990, and Wilkins and DWI refiled the suit in the Circuit Court for Davidson County on May 31, 1991. When the suit was refiled in Davidson County, Wilkins was represented by Irwin Venick and the law firm of Woods & Venick. Neither Seaborg nor his law firm had any involvement in the lawsuit at the time it was refiled in Davidson County. On July 15, 1991, Third National filed its answer in which it stated in relevant part:

SECOND DEFENSE

The plaintiff's claims are barred by the statute of limitations.

In January, 1992, the trial court granted Wilkins' and DWI's motion for a voluntary

nonsuit of all claims against the Bank, except for the claim alleging that the Bank had breached its July 16, 1986, financing agreement. In September, 1992, Joe Sadler, a Third National employee gave his deposition testimony at which time the Bank's July 15, 1991, answer was made an exhibit. Wilkins was in attendance at that deposition. On November 13, 1992, Third National filed a motion for summary judgment, asserting that the remaining claim was barred by the three-year statute of limitations governing injuries to property. The trial court granted the motion by order entered April 2, 1993. In dismissing the suit, the trial court determined that the breach of the financing agreement, if any, occurred on or before July 31, 1986, when Third National unequivocally declined to provide Wilkins with additional financing. The trial court found that Wilkins knew or should have known on July 31, 1986, that the cause of action had accrued; therefore, the trial court concluded that the complaint filed on August 16, 1989, was time barred because it was filed more than three years after the cause of action accrued.

On appeal, the Middle Section of this Court affirmed the decision of the trial court. ***Wilkins v. Third National Bank in Nashville***, 884 S.W.2d 758 (Tenn. App. 1994), ***cert. denied***, (Sept. 26, 1994). This Court held that under T.C.A. § 28-3-105(1), actions for injuries to personal or real property must be commenced within three years from the accrual of the cause of action. ***Id.*** at 761. The Court concluded that no genuine factual dispute existed that Wilkins knew on or before July 31, 1986, that Third National Bank had repudiated all of its earlier financing agreements. Therefore, the Court determined that the trial court had properly concluded that Wilkins' and DWI's cause of action was time-barred when Wilkins filed suit on August 16, 1989. The aforementioned are the pertinent facts gleaned from the prior opinion of the Middle Section of this Court.

On November 12, 1993, while the suit against Third National Bank was pending, Dan W. Wilkins and his wife, Frances Wilkins, filed their legal malpractice claim in the Davidson County Circuit Court. Wilkins voluntarily dismissed that complaint on December 14, 1993, but refiled it on November 8, 1994. Named as defendants in the suit are the law firm of Dodson, Parker, Shipley, Behm & Seaborg, and the following individually named defendants: Harlan Dodson, III, Paul S. Parker, Marietta L. Shipley, Margaret L. Behm and Jon P. Seaborg. Wilkins alleged in the complaint that the defendants had failed to file timely the lawsuit against Third National.

On July 21, 1995, the trial court entered an order dismissing all claims asserted by the Wilkins on behalf of DWI, on the basis that the Wilkins did not have standing to assert those claims. On September 16, 1996, the trial court entered an order dismissing the claims of Frances Wilkins, thereby leaving only the claims asserted by Dan W. Wilkins. Ultimately on May 30, 1997, the trial court issued a Memorandum Opinion granting the defendants' motion for summary judgment. In that opinion, the trial court stated in relevant part:

> On August 16, 1989, Dorothy W., Inc., and Mr. and Mrs. Wilkins, represented by Mr. Seaborg, filed suit against Third National Bank in Chattanooga, Tennessee. That lawsuit was dismissed, without prejudice, in June, 1990 and was refiled on May 31, 1991, in Nashville. At the time of refiling, both Dorothy W. Inc., and the Wilkins were represented by Irwin Venick, a Nashville attorney.
>
> In its answer, Third National Bank raised a statute of limitations defense. The bank later filed for summary judgment on that issue and on April 1, 1993, the Fifth Circuit Court for Davidson County, Tennessee, Judge Walter Kurtz, presiding, granted the defendant bank summary judgment. . . .
>
> . . . .
>
> The trial court's ruling was appealed to the Court of Appeals where it was affirmed. . . . It is clear that both the trial court and the Court of Appeals considered the gravamen of Mr. Wilkins' complaint to be a breach of contract action. As such, the applicable period of limitations is found in Tennessee Code Annotated § 28-3-109(a)(3), which provides for a six (6) year statute of limitations. ***Alexander v. Third National Bank***, 915 S.W.2d 797 (Tenn. 1996).
>
> . . . .
>
> In order to prevail in this action, plaintiffs must first prove Third National Bank was liable to them for breaching its July 16, 1986, agreement to amortize and extend plaintiffs' personal indebtedness. Second, plaintiffs must prove defendants failed to file suit on that claim within the applicable statute of limitations. Since it is undisputed that both the suit filed in behalf of the Wilkins by Mr. Seaborg and that brought by Mr. Venick were within six years from the date the alleged cause of action arose, July 30, 1986, plaintiff cannot prevail in this case. Defendants cannot be held responsible because plaintiffs' attorney in the subsequent Nashville action failed to take issue with the statute of limitations Third National Bank asserted was controlling. Accordingly, the complaint should be dismissed.

On June 6, 1997, the trial court entered its "Order of Dismissal," and Wilkins timely filed a notice of appeal on July 3, 1997.[1]

---

[1]Dan Wilkins is the only plaintiff to appeal.

Rule 56.04 Tenn.R.Civ.P. provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

When the facts material to the application of a rule of law are undisputed, the application is a matter of law for the Court since there is nothing to submit to the jury to resolve in favor of one party or the other. In other words, when there is no dispute over the evidence establishing the facts that control the application of a rule of law, summary judgment is an appropriate means of deciding that issue. *Byrd v. Hall*, 847 S.W.2d 208, 214-15 (Tenn.1993). Consequently, the scope of review is *de novo* with no presumption of correctness. Rule 13(d) T.R.A.P.; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). "No presumption of correctness attaches to decisions granting [or denying] summary judgments because they involve only questions of law. Thus, on appeal, we must make a fresh determination concerning whether or not the requirements of Tenn. R. Civ. P. 56 have been met." *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991).

In the underlying lawsuit against the Bank, the Middle Section of this Court affirmed the trial court's dismissal of the suit on the basis that Wilkins had not initiated proceedings within the three-year limitations period. *Wilkins v. Third National Bank in Nashville*, 884 S.W.2d 758, 762 (Tenn. App. 1994), *cert. denied,* (Sept. 26, 1994). After the Middle Section had issued its opinion in the underlying case, the Tennessee Supreme Court issued its opinion in *Alexander v. Third National Bank*, 915 S.W.2d 797 (Tenn. 1996), which held that the limitations period applicable to lender liability actions is six years. In the case at bar, the trial court dismissed the lawsuit, finding that there could be no cause of action for malpractice because the underlying lender liability lawsuit had been brought within the six-year statute of limitations.

Upon analysis of the case at bar, we find that the operative and relevant question is not whether the underlying lawsuit against the Bank was filed within three years or even six years of the accrual of the cause of action. Rather, the operative question is whether the case at bar was filed within the applicable limitations period for legal malpractice actions. T.C.A. § 28-3-104(a)

states:

> The following actions shall be commenced within one (1) year after the cause of action accrued:
>
> . . . .
>
> (2) Actions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are grounded or based in contract or tort;

While the statute of limitations for legal malpractice is one year from the date the cause of action accrues, when the cause of action accrues is determined by applying the discovery rule. In *John Kohl & Co. P.C. v. Dearborn & Ewing*, No. 01S01-9711-CV-00255, slip op. at 6-7 (Tenn. Oct. 5, 1998), the Supreme Court explained that

> In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage - an actual injury - as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct. *Carvell v. Bottoms*, 900 S.W.2d 23, 28-30 (Tenn. 1995). An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. (Citation omitted.) An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. . . .
>
> The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. *Carvell*, 900 S.W.2d at 29. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date - whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. *Id.* We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. (Citation omitted.) Rather, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Carvell*, 900 S.W.2d at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)).

*Id*. at 6-7.

In Wilkins' prior lawsuit against Third National Bank, the Middle Section of this Court determined that the claim was time-barred under a three-year statute of limitations. The doctrine of collateral estoppel prevents relitigation of a particular dispositive issue which was necessarily and finally decided with finality in a previous suit involving at least one of the parties. *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563, 565 (Tenn. App. 1991). Therefore, the prior decision of this Court that the underlying cause of action was governed by a three-year statute of limitations operates to estop imposition of a different statute of limitations.

This Court held in *Smith v. Petkoff*, 919 S.W.2d 595, 597 (Tenn. App. 1995), that the plaintiff suffered an actual injury or legally cognizable injury when the statute of limitations expired. Accordingly, we conclude that the plaintiff suffered an injury under the *Kohl* analysis when the statute of limitations applicable to the Bank lawsuit expired in July 1989. We reject any contention that the injury was not "legally cognizable" until the judgment of the trial court had been affirmed by the Court of Appeals. The *Carvell* court rejected the same argument stating:

> The plaintiffs contend generally that where an ongoing lawsuit implicates the conduct of a lawyer, and where the validity of a malpractice claim depends on the outcome of this underlying suit, the statutory period of limitations should be tolled until all the appellate proceedings of the underlying suit have been completed.
>
> Although the "tolling" argument pressed by the plaintiffs has been accepted in some jurisdictions, it is not supported by our cases. . . . Since our cases establish that the injury need not be "irremediable" in the sense urged by the plaintiffs, we reject their argument.

*Carvell*, 900 S.W.2d at 29.

The *Carvell* court cited with approval *Chambers v. Dillow*, 713 S.W.2d 896 (Tenn. 1986), a case in which the plaintiff had employed an attorney to bring claims against a county. Although the attorney filed the complaint immediately, the attorney failed to prosecute the action, and the trial court dismissed the case in April, 1981. Not until March 1982 was the plaintiff informed that the action had been dismissed. The plaintiff subsequently hired another attorney who was successful in reinstating the cause of action only to have it dismissed on statute of limitations

grounds. Ultimately in October 1983, the plaintiff filed a lawsuit against the original attorney for legal malpractice. The trial court held that the action was barred by the statute of limitations, but the Court of Appeals reversed that judgment, holding that reinstatement of the action tolled the statutory period of limitation until April 1983 when the lawsuit was dismissed for the second time. Ultimately, the Supreme Court reversed the Court of Appeals, finding that the cause of action accrued in March 1982 when the plaintiff first became aware that his initial case had been dismissed because of the first attorney's negligence.

In light of the foregoing analysis, it is apparent that Wilkins suffered an injury when the statute of limitations expired in July 1989. Therefore, the only remaining issue is whether Wilkins knew or should have known that he had suffered an injury due to his attorney's negligence more than one year before the instant legal malpractice lawsuit was filed. Stated differently, did the statute of limitations in the legal malpractice lawsuit begin to run when Third National Bank, in the underlying lawsuit, filed its answer asserting as an affirmative defense that the statute of limitations had expired.

In *Teeters v. Curry*, 518 S.W.2d 512 (Tenn, 1974), a medical malpractice case which has been universally applied to negligence cases, including legal malpractice cases, the Supreme Court stated:

> We adopt as the rule of this jurisdiction the principle that in those classes of cases where medical malpractice is asserted to have occurred through the negligent performance of surgical procedures, the cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury.

*Id.* at 517.

Wilkins' deposition testimony is revealing as to his knowledge concerning the importance of the statute of limitations. Ironically, Wilkins testified that he first learned about the limitations period when he discovered that the Bank had to file foreclosure documents within a certain time in order to preserve its interest in a house owned by Wilkins. He testified:

Q: At that time, the time of that first meeting that you had with Mr. Seaborg and Mr. Dodson, did you have any understanding what a statute of limitations was?

A: No not to my knowledge. If I recall, I don't, no.

Q: Sometime before the lawsuit was filed did you have some understanding what a statute of limitations was?

A: Yes.

Q: How did you come to that understanding?

A: Well, John Seaborg said that we had -- that the bank had a statute of limitations that they had to file this, some kind of foreclosure documents, before losing their right to the house. And that intrigued me, because we were counting down trying to make sure that they didn't -- you know, that I can make that statute of limitations to protect the equity in that house I could use to pay income taxes. So, to my recollection, that's when -- first time I learned about the term and the importance of the statute of limitations, with John Seaborg.

Q: Once you learned about the importance of the statute of limitations, did you have any discussion with either Mr. Dodson or Mr. Seaborg about what the statute of limitations would be on your claim against Third National Bank?

A: Ultimately, we did, yes.

Wilkins testified further concerning the operation of the statute of limitations and his claims against Third National:

Q: Mr. Wilkins, you've been handed what has been marked exhibit 5 to this case. That purports to be the answer of Third National Bank in the lawsuit filed here in Davidson County. Have you seen this document before?

A: I'm sure I have.

Q: Do you recall when you first saw it?

A: No, I don't.

Q: This is one of those documents that you would have gotten shortly after Mr. Venick received it?

A: I would assume so.

Q: In this particular copy, up in the upper right-hand side there is an exhibit number from another deposition. You were present when Joe Sadler gave a deposition in September of 1992, weren't you?

A: Yes.

Q: That was taken over here at the offices of Farris, Warfield & Kanaday?

A: That's right.

. . . .

Q: You subsequently received a copy of the deposition of Mr. Sadler; is that right?

A: Uh-huh.

Q: Do you recall when you received that?

A: Not specifically, no. I'm sure I received it timely.

Q: Turn over to page 3 of this answer, and the title, "Second Defense." Do you have any understanding what Third National Bank is saying about your complaint, under the caption "Second defense"?

A: Now I do, but ironically that's what I was just telling you. . . . And I would read the body of the thing, and I didn't really even glance at these things until the other day, when my wife brought it up. . . . I figured I didn't know what those things were, and I see now it says, "Barred by the statute of limitations," and I have never brought that up or thought of it. I didn't know what it meant. . . .

Q: In July of 1991 you did know what a statute of limitations was?

A: Yes.

Q: Because you had talked to Mr. Seaborg?

A: Yes. But I didn't really pay any attention to this stuff here.

Q: You read over the answer but you didn't pay attention to what that was?

A: Usually what I would do, I would get my mail. I would be working, doing my stuff, and read through. And I'd just call up if I had a question, and he would talk to me. And this is a lot of reading. Nowadays I read it. Now I have to read everything. But at that point I didn't know I had any problems, I was just concentrating on let's win this lawsuit. And I hate to tell you, that it sounds like I'm a dummy, but quite frankly, I wasn't as well versed in the legal documents as I am today.

. . . .

Q: Well, if you had read this answer back in 1991 that said, "Plaintiff's claims are barred by the statute of limitations," you would have understood that Third National Bank was saying that your claims were barred by the statute of limitations; isn't that correct?

A: No, I would not have understood that, unless I sat and thought about it I probably would. . . . I don't think I even read that part of the first defense because "defense" didn't mean anything to me. . . .

Q: Prior to this point in time you did understand if the statute of limitations barred your claim you were just out of luck, you wouldn't get anything from Third National Bank; isn't that true?

A: That was the concept when we had the incident on the house. . . .

Q: Let's go over this again, Mr. Wilkins. You understood as early as June of 1989 that a statute of limitations could result in your losing your cause of action against Third National Bank, didn't you sir?

A: Yes, I knew it was a possibility.

. . . .

Q: So you understood that a statute of limitations could be a very serious defense?

A: Absolutely.

Q: And you understood that one possible result of a successful statute of limitations defense is you would lose your claims against Third National Bank?

A: In retrospect, yes. But John told me I had no problems, so I didn't worry about it.

Q: As of June 29, 1989, you understood that one possible effect of the successful statute of limitations defense was you could lose your claim against Third National Bank; is that right?

A: Well, yes. But John fold [sic] me not to worry about it so I didn't, so I thought it was inconsequential then.

Q: So had you read this second defense in this answer you would have understood the term "statute of limitations," wouldn't you?

A: Oh, yes, but I would have disregarded it because John assured me there was no problem.

Q: Of course, Irwin Venick was representing you at the time of the answer that has been marked exhibit 5; isn't that right?

A: Yes . . . .


Based on the foregoing analysis, Wilkins knew or by the exercise of reasonable care and diligence, should have known about the alleged legal malpractice on July 12, 1991, when Third National Bank filed its answer in the underlying lawsuit asserting the defense of the statute of limitations. As noted by this Court in *Caledonia Leasing and Equipment Co., Inc. v. Armstrong, Allen, Braden, Goodman, McBride & Prewitt*, 865 S.W.2d 10 (Tenn. App. 1992):

A cause of action for legal malpractice accrues and the statute of limitations commences to run when (1) the attorney has committed negligence, (2) the client has been injured by that negligence, *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876, 878-79 (Tenn. 1981), and (3) the client discovers, or in the exercise of reasonable diligence, should have discovered, the existence of the facts constituting negligence by the attorney and the injury caused by the attorney's negligence. *Security Bank & Trust v. Fabricating, Inc.*, 673 S.W.2d 860, 865 (Tenn. 1983).

*Caledonia*, 865 S.W.2d at 13.

Wilkins testified that he knew what a statute of limitations was and how it operated as early as June 1989. He further testified that he received a copy of the Bank's July 12, 1991, answer which raised as an affirmative defense that the underlying lawsuit was barred by the statute of limitations, and he was in attendance at the September 1992 deposition of Joe Sadler at which the Bank's answer was introduced as an exhibit. Therefore, we conclude that Wilkins should have known as early as July 12, 1991, that Seaborg may have committed legal malpractice by not filing the underlying lawsuit against the Bank within the limitations period. Whether Wilkins actually read the answer is of no consequence to our determination as he is required to use reasonable care and diligence. *Carvell*, 900 S.W.2d at 28. In spite of the assurances that Wilkins alleged he received from Jon Seaborg, it must be remembered that when Third National's answer was filed and when Sadler's deposition was conducted, Irwin Venick and not Jon Seaborg, was Wilkins' attorney. Venick's knowledge of the facts and circumstances is imputed to Wilkins. *Smith v. Petkoff*, 919 S.W.2d 595, 597 (Tenn. App. 1995). In *Roberts v. State*, 546 S.W.2d 264, 265 (Tenn. Crim. App. 1977), the court stated: "[a] client is implied to have notice of facts transmitted to his attorney in the matter and course of his employment for such client." Likewise in *Moody v. Moody*, 681 S.W.2d 545, 546 (Tenn. 1984), the Supreme Court stated "[c]ounsel's knowledge must be attributed to his client, if the actions of the court are to have any efficacy." In *Banton v. Marks*, 623 S.W.2d 113 (Tenn. App. 1981), the Eastern Section of this Court made the following observation:

> Based upon our understanding of *Teeters*, *Ameraccount* and T.C.A.
> § 28-3-104, relief from the one year statute of limitations in legal
> malpractice actions is available only when matters of fact, as opposed
> to matters of law, are unknown or undisclosed to a prospective
> plaintiff.

*Banton,* 623 S.W.2d at 116.

Wilkins has not alleged any fraud or concealment of the facts by any of his attorneys. In fact, when asked about his communications with Venick, Wilkins responded:

Q: How was Mr. Venick at communicating with you?

A: I thought he was excellent.

The foregoing analysis leads us to the conclusion that the cause of action for legal malpractice accrued and Wilkins knew or should have known about it through the exercise of reasonable care and diligence when Third National Bank raised the statute of limitations defense in its answer filed on July 12, 1991. *Gatlinburg Summit Horizontal Prop. Regime Council of Co-Owners, Inc. v. Jarvis*, No. 03A01-9404-CV-00135 (Tenn. App. Jan. 11, 1995). In any event, the cause of action accrued no later than September 1992 when Wilkins attended Sadler's deposition and the Bank's answer was introduced as an exhibit.

Our Supreme Court has held that a plaintiff cannot be permitted to wait until he knows all of the injurious effects or consequences of an actionable wrong to delay the accrual of a cause of action. *Chambers v. Dillow*, 713 S.W.2d 896, 898-99 (Tenn. 1986), *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860, 864-65 (Tenn. 1983). Under T.C.A. § 28-3-104(a), legal malpractice claims must be initiated within one year after the cause of action accrued. We therefore conclude that Wilkins' filing of the complaint on November 12, 1993, was not within one year of the time that the cause of action accrued.

We affirm the judgment of the trial court, though on different grounds than articulated therein. The remaining issues are pretermitted by this opinion. Costs of this appeal are taxed to the appellant, Dan Wilkins, for which execution may issue if necessary.

_____
FARMER, J.

_____
HIGHERS, J. (Concurs)

_____
LILLARD, J. (Concurs)