IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 9, 2007 Session

## JERRY D. CARMACK ET AL. v. LOUIS W. OLIVER, III

**Appeal from the Circuit Court for Sumner County**
**No. 25190-C     Hamilton Gayden, Jr., Judge**

_____

**No. M2006-01873-COA-R3-CV - Filed November 26, 2007**

_____

Landowners who hired an attorney to defend their property rights brought suit for legal malpractice against that attorney related to his representation in the litigation over disputed property. The defendant attorney filed a motion for summary judgment, claiming that the one-year statute of limitations for malpractice claims had passed before the landowners filed their suit against him. The trial court granted the attorney's motion. We affirm the grant of summary judgment to the defendant attorney as to any allegations of delay in seeking an injunction against a trespassing neighbor, since the landowners had complained about the delay to several official bodies over two and a half years before they filed their complaint against their attorney. However, we reverse the trial court as to any alleged acts of legal malpractice that occurred within one year of the filing of the plaintiffs' complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part, and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined. WILLIAM B. CAIN, J., not participating.

August C. Winter, Brentwood, Tennessee, for the appellants, Jerry D. Carmack, Georgia Kay Carmack Brooks, and Brenda Gail Carmack Thomas.

Douglas Fisher, Nashville, Tennessee, for the appellee, Louis W. Oliver, III.

**OPINION**

### I. A PROPERTY DISPUTE

The genesis of this case lies in a dispute pitting three siblings who owned a forty-seven acre tract of land in Sumner County against the owner and developer of an adjoining property. Jerry Carmack, Kay Carmack Brooks, and Brenda Carmack Thomas ("the Carmacks") discovered that their neighbor Kenneth Earp was removing large quantities of topsoil from an area at the edge of their property. Mr. Earp apparently believed that the property he was removing the soil from

belonged to him. In April of 1999, the Carmacks retained attorney Louis W. Oliver III to vindicate their property rights.

Mr. Oliver sent a certified letter to Mr. Earp on April 23, 1999 giving him notice that his activities were encroaching on the Carmacks' property. Mr. Earp did not respond to the letter, but continued his excavations. The Carmacks wanted Mr. Oliver to act as quickly as possible to obtain an injunction to prevent Mr. Earp from removing any more topsoil from the property. However, Mr. Oliver apparently believed that he first had to take some steps to ensure that the Carmacks had sufficient title to the property to successfully challenge Mr. Earp.

At the time Mr. Carmack first contacted Mr. Oliver, life tenants were in possession of the property from which Mr. Earp was removing topsoil.[1] Mr. Oliver advised the Carmacks that they needed to obtain fee simple title to the property in order to proceed effectively against Mr. Earp. Mr. Oliver filed a petition in chancery claiming that the life tenants were committing waste. The life tenants relinquished their tenancy in September of 2000, leaving the Carmacks with a fee simple title.[2]

Mr. Earp was apparently acting in reliance on a survey he had commissioned. On the advice of Mr. Oliver, Jerry Carmack hired a different surveyor to perform his own survey of the property. That survey was originally scheduled to take ten days, but it was not completed for twenty-one months. Mr. Carmack testified in deposition that he believed that the surveyor stopped work for eleven months at Mr. Oliver's request. The survey of the property was finally completed in 2001, and Mr. Oliver obtained an injunction to prevent Mr. Earp from trespassing on the Carmack land. By that time, Mr. Carmack had decided he also wanted to sue some other parties for encroachments that had occurred while the life tenants were in possession of their land.

Mr. Oliver asserts that he had reservations about adding additional defendants to the case, but Mr. Carmack was insistent, and Mr. Oliver acceded to his wishes. The complaint, filed in June of 2001, named not only Mr. Earp, but also the Tennessee Electric Power Company, which had installed utility poles in 1927; the Castalian Springs-Bethpage Water Utility District, which had installed water lines and meters beginning in 1967, the North Central Telephone Cooperative, which had added its lines to the power company's utility poles, and Sumner County, which had allegedly taken some of the Carmacks' land by inverse condemnation in 1956 to build a road.

Prior to the trial of the case, the above named quasi-governmental and governmental bodies filed motions for summary judgment, each of which was based at least in part on the passing of the relevant statutes of limitations. Relying on a case from 1899, Mr. Oliver argued in opposition to the motions that the statutes of limitations did not run against the Carmacks until the life tenants' interest

---

[1]In *Gregory v. Alexander*, 367 S.W.2d 292 (Tenn. Ct. App. 1962), this court first ruled on a dispute as to the land in question and declared that the Carmacks (who were minors at the time) held a remainder interest in the property.

[2]Mr. Oliver also told the Carmacks that he wanted to deal with only one person, not three. At his recommendation, Kay Carmack Brooks and Brenda Carmack Thomas transferred their interests in the property to Jerry Carmack by quitclaim deed on September 10, 2003

was extinguished and their remainder interest was perfected. The trial court ultimately granted the defendants' motions.[3]

The hearing of the remainder of the underlying case took place over two days, on June 2 and 3, 2003, during which the trial court heard testimony by ten witnesses, including the two surveyors. The court found both surveyors to be credible, but held that the correct boundary was the line identified by the Carmacks' surveyor, because Mr. Earp's surveyor relied upon a fence line that was not referenced in any deed or description of the property.

The court accordingly declared that the property in dispute belonged to the Carmacks. The court also found that Mr. Earp had removed 662 loads of topsoil and twenty loads of creek gravel from the Carmack property, and it valued the soil and gravel at $20 per load. The total judgment amounted to $13,740.[4] The Earp defendants were also required to restore an access road on one side of the Carmack property. In response to a subsequent motion, the court awarded the Carmacks their discretionary costs in the amount of $2,956.80

## II. THE MALPRACTICE LAWSUIT

The record indicates that Mr. Carmack had become frustrated with the slowness of his attorney's attempts to secure his rights through the legal process by the fall of 1999. In 2001, he had contacted other attorneys in an unsuccessful attempt to find someone to replace Mr. Oliver. He also reported his dissatisfaction with Mr. Oliver to the Office of the Attorney General, the Tennessee Bar Association, the Tennessee Bureau of Investigation, and the Board of Professional Responsibility. The Board informed him that he was entitled to file a written complaint with them, but Mr. Carmack declined to do so. Mr. Oliver was apparently unaware of Mr. Carmack's actions, and he continued to represent the Carmacks.

On February 24, 2004, the Carmacks filed a legal malpractice complaint against Louis Oliver Although they had prevailed on their claim against Mr. Earp, they alleged that Mr. Oliver's service to them fell below the standard of care. The complaint does not give many specifics about the acts they claimed constituted malpractice, and that led to some confusion about their claims. During the summary judgment process, however, more clarity was added. The Carmacks claimed that because the attorney brought suit against the public utilities when those claims were time-barred they incurred additional unnecessary fees and costs. They further asserted that there was additional pertinent information available as to the damages they suffered, and that as a result of Mr. Oliver's failure to obtain that information and/or bring it to the attention of the court, they did not receive a full or sufficient recovery. They asked to be compensated in damages in an amount "not less than $500,000."

---

[3]On appeal, this court reversed the trial court's order relative to the Castalian Springs - Bethpage Water Utility District. *See Carmack v. Earp*, M2003-03100-COA-R3-CV, 2005 WL 1021549 (Tenn. Ct. App. April 27, 2005) (no Tenn. R. App. P. 11 application filed). The District subsequently reached a settlement with the Carmacks.

[4]The judgment rendered in the underlying case styles the first named defendant as "Tina M. Earp, individually and as executrix of the Estate of Kenneth H. Earp," indicating that Mr. Earp had died during the course of this litigation.

Mr. Oliver's answer denied that he had committed any malpractice and included a counterclaim for unpaid fees in the amount of $19,272.50. He filed a motion for summary judgment, supported by his own affidavit, in which he swore that he had complied with the standard of care for attorneys practicing in Sumner County and that he was not guilty of any professional negligence that proximately caused any loss or damage to the Carmacks. The trial court subsequently struck the motion at Mr. Oliver's request.

Mr. Oliver filed a second motion for summary judgment asserting solely that the one year statute of limitations for professional malpractice had long passed before the Carmacks filed their claim. The trial court granted that motion, holding that the Carmacks' claim had accrued no later than May 21, 2001, when Jerry Carmack complained about Mr. Oliver's performance to the Tennessee Board of Professional Responsibility. This appeal followed.

### III. SUMMARY JUDGMENT AND THE STATUTE OF LIMITATIONS

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In ruling on a summary judgment motion, the trial court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Memphis Housing Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001); *Byrd,* 847 S.W.2d at 210-11.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *BellSouth Advertising & Publishing Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763; *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Draper*, 181 S.W.3d at 288; *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth.,* 38 S.W.3d at 507. We must determine whether factual disputes exist and, if so, whether the disputed fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). Summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary

judgment is entitled to a judgment as a matter of law. *Draper,* 181 S.W.3d at 288; *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Staples*, 15 S.W.3d at 88.

The trial court dismissed the Carmacks' claims against Mr. Oliver on summary judgment on the sole basis that statute of limitations had passed before the Carmacks filed their suit against him. "Defenses based on a statute of limitations are particularly amenable to summary judgment motions." *Hartman v. Rogers*, 174 S.W.3d 170, 172 (Tenn. Ct. App. 2005) (quoting *Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000)).

The statute of limitations for professional malpractice is one year from the time the cause of action accrues. Tenn. Code Ann. § 28-3-104(a)(2). In general, a cause of action for legal malpractice accrues when a client (1) has suffered a legally cognizable injury resulting from an attorney's negligence and (2) the client knows or, in the exercise of reasonable diligence should know, facts sufficient to give notice of that injury. *Carvell v. Bottoms*, 900 S.W.2d 23, 29-30 (Tenn. 1995); *Hartman*, 174 S.W.3d at 173; *Cherry*, 36 S.W.3d at 87.

A client has been injured when there has been the imposition of liability against him or her or where he or she has suffered the loss of a legal right, remedy or interest. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998); *Wilson v. Pickens*, 196 S.W.3d 138, 142 (Tenn. Ct. App. 2005). Injury may also occur where the client is "forced to take some action or otherwise suffer 'some actual inconvenience,' such as the incurring of an expense." *Kohl & Co.*, 977 S.W.2d at 532 (quoting *Cardin v. McClellan*, 85 S.W. 267, 270 (1905)).

The one year legal malpractice statute does not begin to run until the attorney's alleged negligence has actually resulted in harm to the client. *Cherry*, 36 S.W.3d at 84. Knowledge of the injury may be established by actual or constructive knowledge. Constructive knowledge may be established

> where the plaintiff reasonably is aware of facts that reasonably should put him on notice that he has been injured as a result of the defendant's conduct. It is not necessary that the plaintiff know that the defendant's conduct was, in fact, below the standard of care, and the plaintiff may not delay the filing of a suit until all the consequences of the alleged malpractice are actually known. Thus, the plaintiff must be aware of facts which reasonably put him on notice that he has suffered an injury and that the injury resulted from the alleged professional negligence.

*Wilson*, 196 S.W.3d at 142 (citing *Kohl & Co.*, 977 S.W.2d at 532-33).

## IV. ANALYSIS

The record indicates that Jerry Carmack became dissatisfied with Louis Oliver's performance as early as the Fall of 1999 because his delay in obtaining an injunction against Mr. Earp increased

the damage the developer was able to inflict on the property. Mr. Carmack's dissatisfaction led him to seek other counsel and to complain about Mr. Oliver to a number of professional bodies. The trial court accordingly concluded that for purposes of the summary judgment motion, Mr. Carmack had suffered a legally cognizable injury and that he had actual knowledge of that injury no later than May 21, 2001, the date on which he complained to the Tennessee Board of Professional Responsibility about Mr. Oliver's conduct. Since that date was more than two and a half years before he filed this legal malpractice claim, the court held that it was time-barred.

We agree that the trial court was correct to dismiss that portion of the Carmacks' malpractice claim which arose out of Mr. Oliver's alleged failure to seek injunctive relief against Mr. Earp in a timely manner. To the extent such claims are included in the complaint, we affirm the trial court's dismissal of them as time-barred. However, the Carmacks argue that their claims are not based, in whole or in part, on Mr. Oliver's failure to seek a temporary injunction against Mr. Earp sooner than he did.

Instead, the Carmacks argue that their malpractice action is based on other acts by Mr. Oliver and that their claims based on those acts are not barred by the statute of limitations. In particular,
the Carmacks assert that the attorney failed to introduce evidence at trial against the Earps for all the elements of damages they had sustained, including diminution in value of their land due to the removal of topsoil by Mr. Earp. They argue that such proof as to an additional element of damages would have produced a more substantial judgment for them. They argue that since the trial started June 3, 2003, and their complaint for legal malpractice was filed well within one year of that date, this claim was not time barred.

The Carmacks also argue that Mr. Oliver injured them by filing and prosecuting time-barred claims against governmental and quasi-governmental entities. They allege that they learned that their attorney had failed to file these claims within the time allowed when the trial court announced its ruling on motions for summary judgment filed by those entities, which occurred on February 25, 2003, barely within one year of the filing of the malpractice action. The injury they claim was caused by Mr. Oliver's filing and prosecuting time-barred claims was unnecessary fees and expenses. The complaint stated that, as a result of the attorney's negligence, "the plaintiffs also incurred substantial legal and professional fees and expenses for unnecessary services, including, but not limited to, services provided in regard to the prosecution of claims subsequently dismissed on statute of limitations grounds."

In other words, the Carmacks do not allege they could have recovered from the entities had Mr. Oliver sued them earlier. The complaint they have is that he sued them at all after the statute of limitations had run. Mr. Oliver asserts that he did not want to add these entities and to make claims based on "long ago" encroachments, but that the client insisted. Mr. Oliver also asserts that he made an argument in the underlying case that the statute of limitations was tolled during a life estate and that the statute did not begin to run against the Carmacks until they obtained title by extinguishment of the life tenancies. Of course, disputes of material fact preclude summary

judgment, but the issue of whether the filing of the claims was malpractice has not yet been reached. The only ground for the grant of summary judgment was the statute of limitations.[5]

Mr. Oliver argues that these claims were not raised in the complaint. While the Carmacks' complaint was not explicit as to these claims, it did assert that Mr. Oliver "failed to obtain and/or bring to the attention of the court in the underlying action pertinent information necessary to advance the plaintiffs' cause" and that, as a result, "the plaintiffs did not receive full and sufficient recovery for their damages. The specifics of their claim regarding proof of damages were brought out in response to Mr. Oliver's motion for summary judgment.

For his part, Mr. Oliver refers us to the well-known principle, cited in numerous legal malpractice cases, that a plaintiff may not delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. *Kohl v. Dearborn & Ewing*, 977 S.W.2d at 533; *Chambers v. Dillow*, 713 S.W.2d 896, 898-99 (Tenn. 1986); *Wilkins v. Dodson, Parker, Shipley, Behm,* 995 S.W.2d 575, 584 (Tenn. Ct. App. 1999); *Memphis Aero Corp. v. Swain*, 732 S.W.2d 608, 611 (Tenn. Ct. App. 1986). While this is a correct statement of the law, it does not address the Carmacks' argument that they suffered injuries unrelated to the earlier delays, and which arose from negligent acts of representation allegedly committed by Mr. Oliver within the one year period prior to the filing of their malpractice claim.

In *Cherry v. Williams*, 36 S.W.2d at 87, the court rejected the argument that the statute of limitations is tolled during the time that a party continues to be represented by a defendant attorney. Thus, to avoid the bar of the statute, a party has to bring suit within one year of the act or injury complained of, even if that party continues to be represented in the underlying matter by the attorney against whom he brings suit. We do not interpret this holding as precluding a client from suing an attorney for all acts of malpractice once a client learns he has been harmed by an earlier act.

Our courts have not held that the passing of the statute of limitations on earlier acts of alleged professional negligence immunizes a defendant attorney from liability for any later such acts. We see no reason to preclude injured clients from recovering from an attorney whose malpractice injures them simply because they chose not to sue or change attorneys because of earlier injury based on a different act. Accordingly, we reverse the trial court's grant of summary judgment as to any acts committed by Mr. Oliver while in the course of representing the Carmacks in the year prior to February 24, 2004.

We wish to emphasize that in so holding we do not intend to signify that Mr. Oliver's work fell below the standard of care or that the Carmacks did in fact suffer a legally cognizable injury as a result of his work. We have merely decided the issues raised in this appeal from the specific grant of summary judgment. We only hold that any claim arising from Mr. Oliver's actions in the year prior to February 24, 2004 cannot be barred on the basis of the statute of limitations alone. Since the statute was the sole basis upon which the trial court granted summary judgment to Mr. Oliver, we are compelled to reverse that judgment in part.

---

[5]We note that since the claimed damages are for attorney fees and costs, and since Mr. Oliver has filed a counterclaim for unpaid fees, these issues could be resolved in a lawsuit over fees.

## V.

The judgment of the trial court is affirmed in part and reversed in part. We remand this case to the Circuit Court of Sumner County for any further proceedings necessary. Tax the costs on appeal to the appellee, Louis W. Oliver, III.

_____
PATRICIA J. COTTRELL, P.J., M.S.