# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## LARRY CHERRY, ET AL. v. JOHN E. WILLIAMS, JR., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 96C-955   Barbara N. Haynes, Judge**

---

**No. M1997-00216-COA-R3-CV - Decided April 17, 2000**

---

This appeal involves a dispute between a client and his two lawyers regarding their recommendations against accepting a plaintiff's settlement offer in a chancery court proceeding. After the chancellor and this court awarded his adversary damages far in excess of the settlement offers, the client filed a legal malpractice action against his lawyers in the Circuit Court for Davidson County.  The two lawyers moved to dismiss the complaint based on the one-year statute of limitations, and the trial court, treating the motion as one for summary judgment, dismissed the complaint. The client asserts on this appeal that the limitations period did not begin to run until this court affirmed the judgment in the underlying case and that the running of the statute of limitations should have been tolled because the lawyers fraudulently concealed his cause of action against them while they continued to represent him.  We have determined that the complaint is time barred and, therefore, affirm the summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**.

KOCH, J., delivered the opinion of the court, in which CANTRELL, J. and BUSSART, J. joined.

John T. Milburn Rogers, Greeneville, Tennessee, for the appellants, Larry Cherry and Money Management Services, Inc.

Winston S. Evans, Nashville, Tennessee, for the appellee, John E. Williams, Jr.

Thomas C. Corts, Nashville, Tennessee, for the appellee, L. Anthony Deas.

## OPINION

In the early 1990s, Larry Cherry operated Money Management Services, Inc., a financial consulting business in Nashville.  After experiencing some financial reversals, Darlene Pridemore engaged Mr. Cherry to assist her with her problems.  Under the guise of helping Ms. Pridemore, Mr. Cherry effectively placed her in economic slavery by taking total control over her income.  He also inveigled her out of her house at a price below market value.

Ultimately, Mr. Cherry's handling of her affairs prompted Ms. Pridemore to sue Mr. Cherry and Money Management Services, Inc. in the Chancery Court for Davidson County for breach of fiduciary duty. Mr. Cherry retained John E. Williams, Jr. and L. Anthony Deas to represent him in the litigation. As the trial date approached, Ms. Pridemore offered to settle her suit for progressively smaller amounts ranging from $25,000 to $15,000. Messrs. Williams and Deas estimated that Mr. Cherry's and Money Management's maximum exposure was between $20,000 and $25,000 and, accordingly, recommended against accepting the settlement offers. Mr. Cherry followed his lawyer's advice and rebuffed Ms. Pridemore's efforts to settle the case before trial.

The chancery court heard the proof in September 1993, and in October 1993 entered a $75,000 judgment for Ms. Pridemore, representing $50,000 in compensatory and $25,000 in punitive damages. Stunned by the outcome, Mr. Cherry directed Messrs. Williams and Deas to appeal the judgment to this court. On March 17, 1995, this court filed an opinion finding that Mr. Cherry had violated his fiduciary duties to Ms. Pridemore "in every way possible." *Pridemore v. Cherry*, 903 S.W.2d 705, 707 (Tenn. Ct. App. 1995). Accordingly, we affirmed the award of $50,000 in compensatory damages. We also found that the chancery court had set the punitive damages too low and increased the punitive damage award to $100,000. On July 3, 1993, the Tennessee Supreme Court denied Mr. Cherry's application for permission to appeal.

Mr. Cherry blamed Messrs. Williams and Deas for saddling him with an unanticipated $150,000 judgment. On March 15, 1996, he[1] filed a legal malpractice action against Messrs. Williams and Deas in the Circuit Court for Davidson County. Mr. Cherry's complaint alleged that Messrs. Williams and Deas had been negligent because they failed to recognize and communicate the extent of his exposure to damages both in the trial court and in this court. He also alleged that Messrs. Williams and Deas had negligently failed to recommend settling the case when a settlement was possible and that they had otherwise breached the standard of care in the chancery court litigation and on appeal.

Both Mr. Williams and Mr. Deas denied that they had negligently represented Mr. Cherry and his company in the litigation with Ms. Pridemore. Eventually, in March 1997, Mr. Deas, joined later by Mr. Williams, moved for a Tenn. R. Civ. P. 12.03 motion for a judgment on the pleadings. They argued that any alleged negligence with regard to recommending against a settlement, failing to appreciate or communicate the risk of a substantial damage award, or conducting the trial occurred more than one year before Mr. Cherry filed his malpractice action and were, therefore, barred by the one-year statute of limitations in Tenn. Code Ann. § 28-3-104(a)(2) (Supp. 1999). After considering the materials supporting and opposing the motions, the trial court treated the motions as ones for a partial summary judgment and dismissed the claims dealing with the alleged negligence before and

---

[1]Mr. Cherry and Money Management were named plaintiffs in the legal malpractice litigation. Because Mr. Cherry is the sole shareholder of Money Management, we will refer to Mr. Cherry as the plaintiff in the malpractice action for simplicity's sake. As goes Mr. Cherry's claim, so goes Money Management's claim.

during the trial of the *Pridemore* case in the chancery court. Mr. Cherry voluntarily nonsuited the remainder of his claims and appealed to this court.

## I.
### THE STANDARD OF REVIEW

The trial court appropriately converted the Tenn. R. Civ. P. 12.03 motion for judgment on the pleadings to a motion for summary judgment because it considered matters outside the pleadings themselves. Accordingly, we begin by restating the principles for reviewing summary judgments on appeal.

Summary judgments enjoy no presumption of correctness on appeal. *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997); *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996). Accordingly, reviewing courts must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). Summary judgments are appropriate only when there are no genuine factual disputes with regard to the claim or defense embodied in the motion and when the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

Courts reviewing summary judgments must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 792 (Tenn. 1996). Thus, a summary judgment should be granted only when the undisputed facts reasonably support one conclusion -- that the moving party is entitled to a judgment as a matter of law. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d at 26. A party may obtain a summary judgment either by affirmatively negating an essential element of the non-moving party's claim or by conclusively establishing an affirmative defense that defeats the non-moving party's claim. *See Byrd v. Hall*, 847 S.W.2d 208, 215 n.5 (Tenn. 1993).

Defenses based on a statute of limitations are particularly amenable to summary judgment motions. *See Creed v. Valentine*, 967 S.W.2d 325, 327 (Tenn. Ct. App. 1997); *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 820 (Tenn. Ct. App. 1995). Most often the facts material to a statute of limitations defense are not in dispute. When the facts and the inferences reasonably drawn from the facts are not disputed, the courts themselves can bring to bear the applicable legal principles to determine whether the moving party is entitled to a judgment as a matter of law.

## II.
### THE LAWYERS' STATUTE OF LIMITATIONS DEFENSE

Mr. Cherry now attacks his former lawyers' statute of limitations defense on three fronts. First, he argues that his malpractice complaint was timely because he did not suffer a legally cognizable or actual injury until this court filed its opinion on March 17, 1995. Second, he argues that Messrs. Williams and Deas fraudulently concealed their negligence from him. Third, he argues

that the statute of limitations should be tolled as long as Messrs Williams and Deas continued to represent him.

## A.
### ACCRUAL OF MR. CHERRY'S CAUSE OF ACTION

We begin by recognizing that statutes limiting the time for bringing lawsuits are enacted for the repose of society and are not disfavored. *See Applewhite v. Memphis State Univ.*, 495 S.W.2d 190, 195 (Tenn. 1973). As the Tennessee Supreme Court observed long ago, "The peace of society requires [that] rights shall be enforced in a reasonable time, and that they shall be barred if they are not." *Peck v. Bullard*, 21 Tenn. (2 Hum.) 41, 45 (1840).

Professional malpractice actions, like other suits, are subject to a bar of limitations. Legal malpractice actions, whether grounded in contract or tort, must be commenced within one year after the cause of action's accrual. *See* Tenn. Code Ann. §§ 28-3-104(a)(2). The question then becomes, when does the cause of action accrue. As a general rule, a cause of action for an injury accrues when the injury occurs, *see Whaley v. Catlett*, 103 Tenn. 347, 355, 53 S.W. 131, 133 (1899), an "injury" being understood as any wrong or damage done to another's person, rights, reputation, or property. *See Vance v. Schulder*, 547 S.W.2d 927, 932 (Tenn. 1977). Once an injury occurs, a cause of action accrues to the person injured, and, subject to several well-known exceptions, the time for filing a lawsuit to redress that injury starts running right then.

In legal malpractice actions, the one-year statute of limitations starts to run when the client suffers a legally cognizable injury resulting from an attorney's negligence or other wrongdoing, and the client knows or should know the facts sufficient to give notice of that injury. *See John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998); *Carvell v. Bottoms*, 900 S.W.2d at 29; *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 653 (Tenn. Ct. App. 1999). Thus, our first task is to determine when Mr. Cherry suffered a "legally cognizable injury." Determining when a legally cognizable injury has occurred can often be accomplished without too much difficulty when the lawyer's allegedly negligent act or failure to act occurs outside of litigation. However, the task becomes more difficult when the lawyer's act or failure to act occurs during the course of litigation.

This court understands from experience that a lawyer's strategic decisions during a lawsuit may ultimately harm a client even though they appeared plausible and appropriate when they were made.[2] We also understand that, on occasion, a lawyer's handling of litigation can fall below the standard of practice. However, we also know that not every miscue in the course of a lawsuit

---

[2]For example, Harvard law professor Alan Dershowitz recently characterized Robert Bennett's failure to settle Paula Jones's lawsuit against President William Jefferson Clinton as "[t]he greatest legal mistake of the Twentieth Century." The Paula Jones suit opened the way for the grand jury questioning of Mr. Bennett's client, and out of that grand jury appearance came an impeachment of a United States president for only the second time in our country's history. *See* Alan Dershowitz, *Top Ten Legal Blunders*, GEORGE, April 1999, at 56.

ultimately damages the client. Any experienced trial lawyer knows that all kinds of variables over which lawyers have little control may impact the outcome of a lawsuit and that these factors may or may not be directly related to the substance of the lawsuit itself.[3] They can sometimes cause a lawsuit to succeed despite a lawyer's mistakes, and conversely, they may cause an otherwise flawlessly presented case to fail to secure a victory.[4] As experienced New York trial attorney Roy Grutman has put it, in litigation, "the outcome is the ultimate uncertainty."[5] Former United States Supreme Court Justice William O. Douglas expressed the same view when he wrote, "A trial is a chancy thing, no matter what safeguards are provided."[6]

Not surprisingly then, the rules governing when a person suffers legally cognizable injury from litigation malpractice must take into account that not every misstep leads to a fall. Because negligence without injury is not actionable, the legal malpractice statute of limitations does not begin to run until an attorney's negligence has actually injured the client. *See Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860, 864 (Tenn. 1983). And there is no injury until there is the loss of a right, remedy, or interest or the imposition of a liability. *John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d at 532. Before that time, any injury is only prospective and uncertain. *See K.J.B. Inc. v. Drakulich*, 811 P.2d 1305, 1306 (Nev. 1991); 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 21.11, at 791 (4th ed. 1996) ("Mallen & Smith"). There is no legally cognizable injury where there exists only the mere possibility of harm. *See John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d at 532.

In litigation, the most easily identifiable time when rights, interests, and liabilities become fixed is when a court enters judgment. A judgment, after all, is "an adjudication of the rights of the parties in respect to the claim[s] involved." *Ward v. Kenner*, 37 S.W. 707, 709 (Tenn. Ch. App. 1896) (defining judgment). Accordingly, most courts have made the entry of an adverse judgment the starter pistol for the running of the statute of limitations on litigation malpractice. *See Laird v. Blacker*, 828 P.2d 691, 696 (Cal. 1992); *Jason v. Brown*, 637 So.2d 749, 752 (La. Ct. App. 1994);

---

[3]Jerome Frank has written perspicaciously about factors inside the process that may affect a case. He points out, for example, that any particular judge hearing a case may react one way or another toward a particular witness for reasons not readily apparent even to the judge. Accordingly, a trial judge may react favorably to one witness because of the witness's tone of voice and may shrink from another because of the color of his necktie. *See* Jerome Frank, *Courts on Trial* 151-55 (1949).

[4]Judge Frank characterized modern litigation as a substitute for settling quarrels by private warfare. Building on that characterization he noted that litigation in many ways resembles the pattern of warfare with lawsuit strategems and tactics resembling skirmishes and battles. *See id.* at 7-8. In this context, we recall Von Clausewitz's observation that "[i]n war more than anywhere else things do not turn out as we expect." Carl Von Clausewitz, *On War* 193 (Michael M. Howard & Peter Peret trans., Princeton Univ. Press 1976).

[5]Roy Grutman & Bill Thomas, *Lawyers and Thieves* 110 (1990).

[6]*Time, Inc. v. Hill*, 385 U.S. 374, 402, 87 S. Ct. 534, 549 (1967) (Douglas, J., concurring).

*see also* Tyler T. Ochoa & Andrew Wistrich, *Limitation of Legal Malpractice Actions: Defining Actual Injury and the Problem of Simultaneous Litigation*, 24 Sw. U. L. Rev. 1, 27-29 (1994). It is a court's judgment that decrees the loss of a right or remedy or imposes a legal liability. Thus, when a judgment is entered, a "legally cognizable injury" occurs.

Tennessee's courts have previously rejected Mr. Cherry's contention that he did not suffer a legally cognizable injury in the litigation with Ms. Pridemore until this court affirmed the trial court's judgment and increased the punitive damage award. Although a minority of American jurisdictions allow tolling of the statute of limitations pending an appeal, *see* Mallen & Smith, § 21.11, at 806-10, Tennessee does not. The plaintiffs in a legal malpractice action made that exact argument in *Carvell v. Bottoms*, and the Tennessee Supreme Court rejected it. *See Carvell v. Bottoms*, 900 S.W.2d at 29. Following *Carvell* we have consistently rejected the argument that an appeal tolls the running of the statute of limitations. *See Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d at 653; *Wilkins v. Dodson, Parker, Shipley, Behm, & Seaborg*, 995 S.W.2d 575, 580-81 (Tenn. Ct. App. 1998). We reject it again here. The statute of limitations on Mr. Cherry's malpractice claim began to run when the trial court entered its October 18, 1993 final order setting punitive damages.

### B.
#### FRAUDULENT CONCEALMENT OF THE CAUSE OF ACTION

Mr. Cherry also insists that Messrs. Williams and Deas fraudulently concealed their alleged malpractice by telling him that the chancery court made mistakes during the trial and that these mistakes were serious enough to give the appellate court grounds to reverse the $75,000 judgment on appeal. Underlying this argument is Mr. Cherry's confusion concerning just what he had to "discover" under the discovery rule to know that he had been damaged.

The statute of limitations begins to run when the client discovers, or by reasonable diligence should have discovered, the injury. *See John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d at 532; *Nobes v. Earhart*, 769 S.W.2d 868, 871-72 (Tenn. Ct. App. 1988). The client has a right of action against which the statute will run once the client knows or should have known facts indicating harm caused by the lawyer's acts or omissions. *See Carvell v. Bottoms*, 900 S.W.2d at 29; *Smith v. Petkoff*, 919 S.W.2d 595, 597 (Tenn. Ct. App. 1995).

Generally speaking, fraudulent concealment exists when a party having a duty to disclose some fact or facts intentionally hides the facts with the intent to mislead the other party. *See Spence v. Miles Labs., Inc.*, 810 F. Supp. 952, 964 (E.D. Tenn. 1992) (applying Tennessee law). For concealment to constitute fraud, there must be a suppression of material facts that one party was legally or equitably obligated to communicate. *See Patten v. Standard Oil Co.*, 165 Tenn. 438, 444, 55 S.W.2d 759, 761 (1933); Adolph J. Levy, *Solving Statute of Limitation Problems* § 6.38 (1987). Without question, an attorney's purposeful concealment from a client of facts that prevents the client from learning of an injury can toll the statute of limitations on legal malpractice. *See Nobes v. Earhart*, 769 S.W.2d at 872-73; Mallen & Smith, § 21.13.

To toll a statute of limitations, the concealment must involve the facts from which the client could deduce that it had a cause of action. *See Soldano v. Owens- Corning Fiberglass Corp.*, 696 S.W.2d 887, 889 (Tenn. 1985); *cf.*, *e.g.*, *Nobes v. Earhart*, 769 S.W.2d at 870-72 (involving a lawyer's concealment of her affair with the party her client was suing); *Anoka Orthopaedic Assocs., P.A. v. Mutschler*, 773 F. Supp. 158, 170 (D. Minn. 1991) (premising fraudulent concealment on a lawyer's untrue representations that his firm was performing promised audits of an ERISA plan); *Brownell v. Garber*, 503 N.W.2d 81, 86 (Mich. Ct. App. 1993) (holding that an issue of concealment existed where a lawyer may have falsely represented that he had done certain work which, in fact, he had not done). Perhaps the classic example of the type of fraudulent concealment that will toll the statute of limitations is where an attorney intentionally does not inform the client about an adverse lawsuit order, which order arguably stemmed from the attorney's mishandling of a case. *See e.g.*, *Fidelity Life Ins. Co. v. Best, Sharp, Thomas, and Glass*, 624 F.2d 145, 147, 149 (10th Cir. 1980); *Hood v. McConemy*, 53 F.R.D. 435, 446-47 (D. Del. 1971); *but see Glad v. Gunderson, Farrar, Aldrich*, 378 N.W.2d 680, 683 (S.D. 1985).

A lawyer's rosy characterization of an order adverse to the client does not amount to fraudulent concealment of malpractice. *See Riddle v. Driebe*, 265 S.E.2d 92, 95 (Ga. Ct. App. 1980). As long as the client is aware of the fact that the court has ruled against his or her rights or interests, arguably due to the lawyer's mishandling of the case, then it matters not how counsel may try to downplay or "spin" the bad result. At that point the client is aware of the fact of injury. For statute of limitations purposes, that awareness is not negated by the lawyer's assurances that the court rendering the adverse order got the law wrong. Nor does it matter that the lawyer states that he or she believes that an appellate court will reverse the adverse order. As we have previously said, "[W]e do not believe that reliance upon erroneous legal advice can operate to toll the statute of limitations," inasmuch as the discovery rule relating to injury only applies to matters of fact unknown to a prospective plaintiff, not to matters of law. *See Spar Gas, Inc. v. McCune*, 908 S.W.2d 400, 404 (Tenn. Ct. App. 1995).

Mr. Cherry argues here that the statute of limitations should be tolled because Messrs. Williams and Deas allegedly assured him that the trial court's $75,000 judgment would be overturned on appeal. He asserts that his lawyers' assurances kept him from noticing that he had been injured. In Mr. Cherry's words, "I was assured by my attorneys . . . I trusted my attorneys implicitly."

Despite his professed trust in Messrs. Williams and Deas, Mr. Cherry knew the facts that actually or constructively put him on notice of a legally cognizable injury. He knew that the chancery court had entered judgment against him and Money Management for $75,000 in damages. While Messrs. Deas and Williams may have tried to put this loss in its most optimistic light, the record contains no hint that they attempted to hide the judgment from Mr. Cherry. Mr. Cherry's own malpractice complaint demonstrates that he knew and understood at the time that the $75,000 judgment was untoward and unexpected because he alleges that the news of the judgment left him in "a state of disbelief" based on his expectations about the outcome of the trial based on his former lawyers' representations. Certainly, a client who is shocked into "a state of disbelief" by a totally unexpected adverse result is put on inquiry notice of his or her lawyer's possible mishandling of the

case. The complaint in this suit even alleges that Mr. Cherry confronted Messrs. Williams and Deas about the adverse trial judgment. Viewing all the facts in the light most favorable to Mr. Cherry, there is no reasonable dispute that he knew about the adverse judgment as soon as it was filed and that he believed or suspected that the untoward result had been caused by this lawyers. Accordingly, we do not find that Mr. Cherry and Money Management have made out a triable issue on any claim of fraudulent concealment on the part of their attorneys.

## C.
### CONTINUOUS REPRESENTATION

As a final matter, Mr. Cherry argues that Messrs. Williams and Deas continued to represent him and continued to assure him that they would ultimately prevail on appeal. As Mr. Cherry now puts it, his former lawyers continued to represent him in the litigation with Ms. Pridemore "in hopes that their continued representation . . . would allow the statute of limitations to run." We have determined that this argument is inconsistent with the discovery rule.

Mr. Cherry's "continuing representation" argument is similar to the "continuing treatment" doctrine formerly recognized in medical malpractice cases. In the medical malpractice context, the Tennessee Supreme Court has now held that the continuing treatment exception has been subsumed into the discovery rule. Thus, the court has stated that "[i]f there is actual proof that the patient knows or reasonably should know of the injury or harm before termination of the medical treatment, the statute of limitations is not tolled." *Stanbury v. Bacardi*, 953 S.W.2d 671, 676 (Tenn. 1997).

We perceive no reason for adopting a different rule for legal malpractice cases, especially now that the Tennessee Supreme Court has held that the discovery rule in legal malpractice cases operates in essentially the same way that the discovery rule in medical malpractice cases operates. *Compare Carvell v. Bottoms*, 900 S.W.2d at 28 (holding that discovery occurs when "the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by [the] defendant's negligence") *with Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998) (holding that discovery occurs when the plaintiff "discovered, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced his injuries; and (2) the identity of the defendant who breached the duty").

In the context of a legal malpractice claim, we now hold that a litigant who learns that it has suffered a cognizable legal injury and that this injury was caused by the negligence of its lawyer but who nevertheless continues to be represented by that lawyer will be forever barred from bringing suit against the lawyer unless it files suit within one year after the discovery of the injury and its cause. Applying the principle to this case, we find that Mr. Cherry "discovered" his injury when the trial court filed its judgment in October 1993 because he knew at that time (1) that the chancery court had awarded an unexpectedly large judgment against him and (2) that this judgment resulted from the pre-trial and trial strategy and conduct of Messrs. Williams and Deas. Because the statute of limitations began to run in October 1993, Mr. Cherry's suit filed in March 1996 against Messrs. Williams and Deas was barred because it was not filed within one year of October 1993.

-8-

## III.

We affirm the summary judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Larry Cherry and his surety for which execution, if necessary, may issue.