IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 12, 2006 Session

## LAURA JOHNSON v. CLOVER BOTTOM DEVELOPMENT CENTER, ET AL.

Appeal from the Chancery Court for Davidson County
No. 03-2324-I    Claudia Bonnyman, Chancellor

No. M2005-01440-COA-R3-CV - Filed on January 31, 2007

An employee of Clover Bottom Development Center appeals the summary dismissal of her action under the Tennessee Handicap Act. The employee alleged she was the victim of discrimination due to her medical limitations. The trial court dismissed the action finding the employee failed to show she sustained an adverse employment action, an essential element of her claim. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Rebecca T. Garland, Brentwood, Tennessee, for the appellant, Laura Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; and Steven B. McCloud, Assistant Attorney General, for the appellee, Clover Bottom Development Center, and State of Tennessee Department of Mental Health & Developmental Disabilities.

## OPINION

Laura Johnson was hired by Clover Bottom Development Center in 1996 as a developmental technician. Clover Bottom, which is operated by the State of Tennessee Department of Mental Health and Developmental Disabilities, serves as a residential and training facility for individuals who are mentally and physically handicapped.

Initially, Ms. Johnson's duties as a developmental technician required that she interact with residents of Clover Bottom. Shortly after beginning work at Clover Bottom, Ms. Johnson suffered a stroke, after which she was able to return to work with certain medical restrictions due to prescribed blood thinners. Her doctor recommended that she avoid exposure to injuries that might cause bleeding. She was also limited to the amount of weight she could lift. Because her job as a developmental technician required interaction with the residents, which exposed her to the potential

for injuries that might cause bleeding, Clover Bottom created a position of a clothing clerk for Ms. Johnson, which was classified as a "light-duty" position. In her new position as a clothing clerk, Ms. Johnson was responsible for maintaining clothing for the residents, keeping track of each resident's clothing inventory, and handling seasonal storage of clothing, which duties were suitable for Ms. Johnson's restrictions.

Almost five years later, in June of 2002, Ms. Johnson alleges that her supervisor gave her a work assignment that violated her medical restrictions.[1] Upon receiving the assignment, Ms. Johnson reminded her supervisor of her medical restrictions,[2] following which her supervisor requested that she provide an updated list of restrictions. On June 28, 2002, Ms. Johnson delivered an updated medical restriction letter to her supervisor. Thereafter, Ms. Johnson alleges that her supervisor told her there was no job for her at Clover Bottom and that she should go home.

Ms. Johnson alleges that over the next month she attempted to reconcile her employment situation by contacting "various state officers." A meeting was held at Clover Bottom on July 31, 2002, after which Ms. Johnson returned to work with her restrictions having been updated and an agreement having been reached as to the appropriate accommodations for Ms. Johnson.

One week later, on August 9, 2002, Ms. Johnson states that her supervisor threw a resident's clothing on the floor in front of her and ordered Ms. Johnson to clean up the mess. Ms. Johnson states that she complied and cleaned up the mess. The next day, August 10, 2002, while away from work shopping, Ms. Johnson suffered a severe stroke that left her permanently and totally disabled.

Ms. Johnson filed this action against Clover Bottom alleging it discriminated against her in violation of the Tennessee Handicap Act, citing Tenn. Code Ann. § 8-50-103.[3] To prove handicap discrimination, she was required to show Clover Bottom took an adverse employment action against her, and she contends the stroke she suffered on August 10, 2002, was the adverse employment action because the stroke was the direct result of a supervisor's misconduct and resulted in her no longer being able to work.

---

[1]Ms. Johnson claims she was instructed to run some errands to pick up supplies for Clover Bottom, which included sacks of feed and fertilizer. Ms. Johnson asserted that the weight of these items exceeded the amount of weight she was permitted to lift.

[2]The record is silent as to whether Ms. Johnson carried out the task under protest or simply refused to complete the assigned task.

[3]Ms. Johnson additionally cited the Tennessee Human Rights Act (THRA) in her complaint; however, Ms. Johnson has not alleged that she was the victim of discrimination based on race, creed, color, religion, sex, age or national origin, being the foundation of a claim under the THRA. In response to a Motion to Dismiss that was ultimately denied, her counsel explained the Tennessee Handicap Act provides an aggrieved person such as Ms. Johnson all of the rights provided for in the THRA, and it was for that reason the THRA was cited in the complaint in this action. Ms. Johnson, however, did not file a sworn complaint with the Tennessee Human Rights Commission. Accordingly, we will limit our review to the Tennessee Handicap Act.

Clover Bottom timely filed an Answer denying any violation of the Tennessee Handicap Act. After discovery was taken, Clover Bottom filed a Motion for Summary Judgment contending, *inter alia*, that Ms. Johnson failed to establish a causal connection between her alleged disability and an adverse employment action. The trial court found that her stroke did not qualify as an adverse employment action, which is an essential element of a claim under the Tennessee Handicap Act, and dismissed Ms. Johnson's case. Ms. Johnson appeals.

## STANDARD OF REVIEW

The issues were resolved in the trial court upon summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Advert. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

Summary judgments are proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd*, 847 S.W.2d at 210; *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001); however, they are not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that party is entitled to judgment as a matter of law. *Godfrey*, 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

ANALYSIS

The Tennessee Handicap Act prohibits discrimination in the work place based on an employee's handicap or perceived handicap. Specifically, it prohibits:

> Discrimination in the hiring, firing and other terms and conditions of employment of the state of Tennessee or any department, agency, institution or political subdivision of the state, or of any private employer, against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.

Tenn. Code Ann. 8-50-103(a). A plaintiff alleging discrimination in violation of the Tennessee Handicap Act must establish three elements:

1. The claimant was qualified for the position;
2. The claimant was disabled; and
3. The claimant suffered an adverse employment action because of that disability.

*See Barnes v. Goodyear Tire and Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000). All three of these elements are essential to a successful claim. *Id.*

The trial court summarily dismissed the Tennessee Handicap Act claim upon a finding that Ms. Johnson's August 10, 2002 stroke, which left her permanently and totally disabled and unable to work, did not qualify as an adverse employment action by Clover Bottom.

> An adverse employment action, as contemplated by the [Tennessee Handicap Act], is a material and adverse change in the terms and conditions of employment. *See generally Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996). The change must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993). The following is a non-exhaustive list of adverse employment actions: termination of employment; demotion evidenced by a decrease in wage or salary, by a less distinguished title, or by a material loss of employment benefits; or a significant reduction of material responsibilities. *Crady*, 993 F.2d at 132; *see also DiMeglio v. Haines*, 45 F.3d 790, 804 (4th Cir.1995) (indicating a reprimand and reassignment may constitute an adverse employment action); *Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir.1994) (stating dramatic downward shift in skill level required can constitute an adverse employment action); *Goodwin v. Circuit Court of St. Louis County, Mo.*, 729 F.2d 541, 547 (8th Cir.1984) (holding transfer, with the same pay, from hearing officer to staff attorney was adverse because less prestigious); *Frazier*

*v. Heritage Fed. Bank for Savings*, 955 S.W.2d 633, 636 (Tenn. Ct. App. 1997) (noting reduction in duties and prestige were "materially adverse changes" in terms and conditions of employment).

*Barnes*, 48 S.W.3d at 707.

In *Barnes* the plaintiff was laid off by Goodyear, which the court found was "clearly an adverse employment action." *Id*. As the Court explained, Goodyear's decision to lay off the plaintiff and to offer him a "temporary, hourly position which would have paid the plaintiff approximately one-half of his previous salary . . . [that] did not include employee benefits, and acceptance of the position may have terminated the plaintiff's right to be recalled as a salaried worker . . . constituted an adverse employment action." *Id*. That is not the case here.

Ms. Johnson contends she "suffered the most adverse of employment actions, i.e. no longer able to be employed . . ." and that "while Defendants did not directly terminate [her], the result of the discriminatory and retaliatory action of [her supervisor] effectively did so."[4] However, Ms. Johnson presented no competent medical evidence of a causal link between her supervisor's alleged behavior on August 9, and the stroke she suffered on August 10. Furthermore, she presented no evidence to support the conclusory statement that her supervisor's behavior was in any way related to her medical limitations preceding the stroke on August 10.

Looking to the undisputed facts, the stroke on August 10, 2002, is the sole reason Ms. Johnson has not and cannot return to work at Clover Bottom. This is evident from the fact the Social Security Administration has declared Ms. Johnson one hundred percent disabled. It is not because of any employment action by Clover Bottom, adverse or otherwise. As a consequence, Ms. Johnson was unable to establish an essential element of her claim. Accordingly, summary dismissal was proper.

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Appellant, Laura Johnson.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[4] The discriminatory and retaliatory action of her supervisor to which Ms. Johnson is referring is her supervisor's alleged act of throwing the resident's clothes on the floor and instructing her to clean the mess.