**AMERICARE SYSTEMS, INC.,**
Plaintiff–Appellant,

v.

**Thomas M. PINCKNEY, JR.; Howell & Fisher, PLLC, Defendants–Appellees.**

No. 15–5380.

United States Court of Appeals, Sixth Circuit.

Jan. 6, 2016.

BEFORE: KEITH, ROGERS, and GRIFFIN, Circuit Judges.

DAMON J. KEITH, Circuit Judge.

Plaintiff-appellant Americare Systems, Inc. ("Americare") appeals from the district court's order granting summary judgment in favor of Defendant-appellees Mr. Thomas Pinckney and, his law firm, Howell & Fisher, PLLC (collectively "Defendants") and denying Americare's cross motion for summary judgment. The district court concluded that Americare's malpractice lawsuit was filed after the one-year statute of limitations had expired. For the following reasons, we agree and **AFFIRM** the district court's order.

## I. BACKGROUND

In November 2004, Americare hired Mr. Thomas Pinckney, of the law firm Howell & Fisher, PLLC, to represent the company and other parties in a lawsuit initiated in Bedford County, Tennessee. (Appellant's Br. 3.) The plaintiffs in that suit ("Bedford Plaintiffs") sued Americare for negligence that allegedly caused the death of a relative. (*Id.*) During the first phase of the trial, the jury found in favor of the Bedford Plaintiffs and awarded compensatory damages. (*Id.* at 4.) The jury also found that Americare and its co-defendant should be held liable for punitive damages. (*Id.*)

The trial then moved into its second phase where the jury determined the amount of the punitive damages award. (*Id.*) During this phase of the trial, the Bedford Plaintiffs offered into evidence a highlighted article from the *St. Louis Business Journal*, which stated that in 1998 Americare's gross sales were about $47 million (hereinafter "hearsay article"). (*Id.* at 5.) Even though he recognized the article as inadmissible hearsay, not subject to any exception, Mr. Pinckney did not object to its admission. (*Id.*) On April 30, 2010, the jury found Americare and its co-defendant liable for $5 million in punitive damages. (*Id.* at 6.)

The punitive damages award was subject to review by the trial judge before it became final. Nevertheless, immediately after the trial, Americare's Chairman, Mr. Richard Montgomery, and Mr. Pinckney began discussing possible grounds for appeal. (*Id.*) According to Americare, Mr. Pinckney told Mr. Montgomery that he "didn't really represent Americare, but he represented the nurses." (*Id.* at 7.) Mr. Montgomery recognized that was a "problem," so he met with Americare's corporate counsel. (Richard Montgomery's Dep. 4:1–5:9 ECF No. 51–5.) Because of the adverse judgment and punitive damages award, Americare decided to hire new attorneys to handle the post-trial matters. (*Id.* at 6:10–12.)

Americare retained the law firms Miller & Martin, PLLP and Moore & Lee, PLLC. (Appellant's Br. 7–8.) Between July and September of 2010, the firms for both parties reviewed and revised the Bedford Plaintiffs' proposed judgment affirming the trial court's punitive damages award and the court's findings of fact. (*Id.* at 8.) The firms also reviewed the trial transcripts and researched various issues, including due process concerns related to the punitive damages award. (*Id.*) On October 1, 2010, the trial judge affirmed the jury's punitive damages award. (Order Approving Verdict 21, ECF No. 51–11.) The trial judge's findings directly addressed the hearsay article, noting that "[t]o the great surprise of this trial judge, there was no hearsay objection to the introduction of this evidence." (*Id.* at 7.)

On January 17, 2011, Americare sent a letter to Mr. Pinckney notifying him of the company's intent to pursue a legal malpractice claim against him and his firm. (Appellees Br. 15.) It also appealed the trial court's punitive damages ruling. (Appellant's Br. 10) On September 29, 2011, Americare filed this legal malpractice action against Mr. Pinckney and Howell & Fisher in the U.S. District Court for the Eastern District of Tennessee. (*Id.*) The district court stayed this action pending the outcome of the appeal against the Bedford Plaintiffs. (*Id.*) The Tennessee Court of Appeals affirmed the trial court's judgment for the Bedford Plaintiffs, but reduced the punitive damages award against Americare from $5,000,000 to $2,985,000. (*Id.* at 10.) On June 11, 2014, the stay in this malpractice suit was lifted. (*Id.*) And on April 2, 2015, the district court granted summary judgment in favor of Mr. Pinckney and Howell & Fisher, holding that Americare's legal malpractice claim is barred by the one-year statute of limitations. *Americare Sys, Inc. v. Pinckney*, No. 4:11–cv–53, 2015 WL 1521936 (E.D.Tenn. Apr. 2, 2015). Americare now appeals.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Davis v. Sodexho*, 157 F.3d 460, 462 (6th Cir.1998). "The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(a). "The burden is generally on the moving party to show that no genuine issue of material fact exists." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir.2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). And the evidence is viewed in the light most favorable to the non-moving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III. DISCUSSION

Americare's malpractice action against Mr. Pinckney stems from his failure to object to the hearsay article at trial, which resulted in a large punitive damage award. Americare's central theory is that had it not been for Mr. Pinckney's mistake, the company would not have been liable for the punitive damages, and it would not have needed to retain new counsel to contest the award.

Mr. Pinckney argues that this legal malpractice action is barred by the one-year statute of limitations. In response, Americare argues that it had not suffered a "legally cognizable injury" sufficient to trigger the accrual of the statute of limitations before the trial court had affirmed the jury's punitive damages award on October 1, 2010. Therefore, according to Americare, its September 29, 2011 Complaint fell within the one-year statute of limitations. The district court held that Americare's claim was time-barred. We agree.

To establish a legal malpractice claim under Tennessee law, Americare must prove:

(1) that the accused owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damages, (4) that the breach was the cause in fact of the plaintiff's damages, and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages.

*Dorrough v. Tarpy*, 260 Fed.Appx. 862, 863 (6th Cir.2008) (quoting *Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn.2001)). In Tennessee, legal malpractice claims must be commenced within one year after the cause of action accrues. Tenn.Code Ann § 28–3–104(c)(1) (2014).

Tennessee follows the oft-recited discovery rule as it pertains to accrual. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn.1998). "[A] cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Id.* The plaintiff (1) "must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct," and (2) "must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct." *Id.* We address each element in turn below.

### A. Injury

For the purposes of the discovery rule, an actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of liability. *Id.* But a plaintiff may also suffer an actual injury if he or she suffers "some actual inconvenience"—such as incurring an expense, as a result of the defendant's negligent or wrongful act. *Id.* In a legal malpractice action, incurring legal fees and expenses may constitute an actual injury, even though no adverse judgment or order has been entered. *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 543 (Tenn.Ct.App.2012) (holding that the plaintiff suffered damage in the form of the inconvenience and ex-

pense of defending a motion for summary judgment as a result of the attorney's negligence); *see also Honeycutt v. Wilkes,* No. W2007–00185–COA–R3–CV, 2007 WL 2200285, at *7 (Tenn.Ct.App. Aug. 2, 2007) (holding that a wife suffered an actual injury—prior to the entry of final judgment—in a legal malpractice claim, when she was forced to defend against her ex-husband's petition to terminate her alimony because of her divorce attorney's advice regarding a cohabitation clause in the marital dissolution agreement). "A plaintiff may not ... delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff." *Kohl,* 977 S.W.2d at 532.

The inconvenience, time, and expense that Americare incurred by retaining new counsel constituted an "actual injury" under the discovery rule. *See Cardiac Anesthesia Services,* 385 S.W.3d at 544. But for the $5 million punitive damages award it would not have hired new counsel; like the plaintiff in *Honeycutt,* who was forced to hire a new attorney to defend against her ex-husband's attempt to terminate his alimony payments. Moreover, the fees that Americare incurred through the newly-retained counsel are the same type of expenses that *Cardiac Anesthesia Services* identifies as causing plaintiffs an "actual inconvenience" sufficient to constitute an accrual-triggering injury. *See Cardiac Anesthesia Servs.,* 385 S.W.3d at 541–44. In *Cardiac Anesthesia Services,* legal fees were incurred defending against a motion for summary judgment. *Id.* at 543. Here, Americare incurred fees when it retained counsel to contest the punitive damages award and prepare for the appeal. *See id.* at 541 (citing *Kohl,* 977 S.W.2d at 533).

The October 1, 2010 decision that affirmed the jury's award of punitive damages was "additional damage," but it was "not necessary for [Americare] to have suffered all the injurious effects or consequences of the alleged negligence in order for the statute to begin running." *Cardiac Anesthesia Servs.,* 385 S.W.3d at 543 (quoting *Honeycutt v. Wilkes,* 2007 WL 2200285, at *7 (citing *Kohl,* 977 S.W.2d at 533)).

Americare cites *Cherry v. Williams,* 36 S.W.3d 78, 84–85 (Tenn.Ct.App.2000), for the proposition that "entry of an adverse judgment [is] the starter pistol for the running of the statute of limitations on litigation malpractice." *See id.* (citing *Laird v. Blacker,* 2 Cal.4th 606, 7 Cal. Rptr.2d 550, 828 P.2d 691, 696 (1992); *Jason v. Brown,* 637 So.2d 749, 752 (La.Ct. App.1994)). Therefore, according to Americare, the "only point at which [it] can be said to have sustained an injury is once the trial court entered judgment on October 1, 2010."

But *Cherry* merely recognizes that the entry of judgment is the "most easily identifiable time" that a court could use to determine when an actual injury has occurred, not the only time. *Id.* at 84–85. By no means should it be read as holding that an actual injury cannot occur until adverse judgment has been entered. *See id.* As we read *Cherry* and other cases, a court's entry of judgment might always be considered an actual injury; however, that does not foreclose the possibility that an injury sufficient to warrant accrual of the statute of limitations occurred before the entry of that judgment. *See id.; Cardiac Anesthesia Servs.,* 385 S.W.3d at 543 ("[The] damage need not be the entry of an order adverse to the client...."); *see also Kohl,* 977 S.W.2d at 533 ("[I]t [is] unnecessary for the plaintiffs to have suffered all the injurious effects or consequences of the defendants' negligence in order for the statute to begin running.").

Americare also asserts that if the claim had been filed before the entry of judg-

ment, a court would have dismissed it as not being ripe for review. Americare argues that the jury's punitive damages award was merely speculative at that point, and was not final until affirmed by the trial court. Americare's argument seems to be that it had not suffered any real harm until the jury's punitive damages award had been affirmed.

But, as mentioned above, the negligent conduct was the attorney's malpractice, and the harm suffered was the fees that Americare incurred by retaining new counsel. Therefore, whether the punitive damages award had been affirmed or not, Americare had a ripe legal malpractice claim well before the jury's award was affirmed when it had suffered damages by incurring the expense of retaining new counsel as a result of the alleged malpractice.[1]

Despite having suffered an injury, in the form of the inconvenience, time, and expense of retaining new counsel, the statute of limitations could not begin to accrue until Americare had suffered the injury *and* was also aware of Mr. Pinckney's tortious or negligent conduct. Therefore, we must next determine when Americare became aware of Mr. Pinckney's malpractice.

## B. Notice of the Facts Giving Rise to the Injury

Under Tennessee law, a plaintiff must have actual or constructive knowledge that his injury was sustained as a result of wrongful or tortious conduct by the defendant-attorney.[2] *Kohl,* 977 S.W.2d at 532. Not only must the plaintiff know that he has suffered an injury, but he must also know of the defendant's wrongful or tortious conduct that gave rise to the injury. *Id.*

The plaintiff can have either actual or constructive knowledge of the wrongful or tortious conduct. *Id.* Actual knowledge of conduct could occur where the attorney admits committing malpractice or where the plaintiff has been informed by another attorney that malpractice has occurred. *Id.* A plaintiff has constructive knowledge of the conduct when "[he or she] reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of defendant's negligent or wrongful conduct." *Id.*

The new attorneys that Americare hired knew or should have known of Mr. Pinckney's alleged negligent conduct. And that knowledge, whether actual or constructive, is imputed to Americare.[3] *See Wilkins v.*

1. Accordingly, we need not address the question of whether a jury's punitive damages award, which has not been affirmed by a trial court, is an injury sufficient to trigger the statute of limitations.

2. Some confusion may arise when precise language is not used to identify the injury suffered and the suspect conduct. *See Kohl,* 977 S.W.2d at 532–33 (explaining that a plaintiff would have "actual knowledge of an *injury*" if he has been told that the attorney committed malpractice, but, ultimately concluding that the injury occurred when the plaintiff began incurring expenses, and had to take action, as a result of the malpractice) (emphasis added). To eliminate confusion, this may be viewed as knowledge of two dif-

ferent things. First, knowledge of the injury. Second, knowledge of the negligent or wrongful conduct. Identifying the conduct and the injury is especially important in cases such as this one, where the two events may have happened at different times. Here, Americare suffered the injury in May 2010, when it retained new counsel, and had constructive knowledge of the facts giving rise to the injury in July 2010.

3. Americare's counsel has also argued that an attorney's actual knowledge can be imputed to a client, but their constructive knowledge cannot. There is no support for this proposition, and Tennessee case law suggests that an attorney's constructive knowledge can, in fact, be imputed to a client. *See Cardiac*

*Dodson, Parker, Shipley, Behm & Seaborg*, 995 S.W.2d 575, 584 (Tenn.Ct.App. 1998) ("[A] client is implied to have notice of facts transmitted to his attorney in the matter and course of his employment for such client.") (internal quotation marks and citation omitted). The district court analogized the facts of this case to *Cardiac Anesthesia Services*. We agree that these cases are similar. In both cases the plaintiffs had retained a new, independent counsel. And both cases also involve filings that required the plaintiffs to take some affirmative action. In *Cardiac Anesthesia Services*, the plaintiffs defended against a motion for summary judgment, and, here, Americare drafted a revised proposed judgment following the jury's verdict and punitive damages award.

Billing records show that between July and September 2010, the firms for both parties reviewed and communicated about the Bedford Plaintiff's proposed judgment affirming the jury's punitive damages award. That proposed judgment, revised by Americare's newly-retained counsel, specifically referred to the hearsay article that was the basis for the punitive damages award. Further, billing records show that Americare's new counsel reviewed the trial transcript and researched the punitive damages issues.

The crux of Americare's malpractice case against Mr. Pinckney is that any reasonably prudent attorney would have identified the article as hearsay and objected to its admission at trial. Assuming that the newly-retained counsel are reasonably prudent, the attorneys necessarily would have identified the article as hearsay when they reviewed the trial records and the

proposed judgment, and prepared to contest the punitive damages award. We agree with the district court that the newly retained counsel either knew or should have known that Mr. Pinckney's failure to object to the hearsay article was negligent conduct. We also agree that their knowledge is imputed to their client. *Wilkins*, 995 S.W.2d at 584. Therefore, Americare, through its new attorneys, had actual or constructive knowledge of the facts giving rise to the injury, on or before, July 2010—the time it revised the Bedford Plaintiff's proposed judgment that specifically referenced the hearsay article.

Americare claims that it would be bad policy to require an appellate counsel to "squeal" on trial counsel by requiring that they notify the client of trial counsel's malpractice. This court does not set Tennessee policy. We hold only that, on these facts, appellate counsel either knew or should have known of Mr. Pinckney's alleged negligent or wrongful conduct, and Tennessee law imputes this to Americare.

Finally, we recognize Americare's point that under Tennessee law, the question as to "whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a question of fact." *Sherrill v. Souder*, 325 S.W.3d 584, 596 (Tenn.2010). However, this is not always the case. "If the evidence is undisputed and only one conclusion can be drawn therefrom, the time of accrual of the cause of action is a question of law to be determined by the Court." *Osborne Enter., Inc. v. City of Chattanooga*, 561 S.W.2d 160, 165 (Tenn.Ct.App.1977). Only one conclusion can be drawn from this record. Given the relationship between

---

*Anesthesia Servs.*, 385 S.W.3d at 538 ("Once it has been established that the attorney obtained the relevant knowledge during the course of representing the client, 'the constructive notice thereof to the client is conclu-

sive, and cannot be rebutted by showing that the attorney did not in fact impart the information....'") (quoting *Boote v. Shivers*, 198 S.W.3d 732, 742 (Tenn.Ct.App.2005)).

the article, the punitive damages award, and Americare's injury, Americare reasonably should have become aware of facts sufficient to put a reasonable person on notice that Pinckney's failure to object to the article caused injury, in July 2010, well before October 1, 2010.

## IV.  CONCLUSION

Americare suffered an actual injury when it retained new counsel in May 2010. The company knew or should have known of the facts that gave rise to the injury— Mr. Pinckney's negligent representation at trial—when the new counsel knew or should have known of the alleged wrongful conduct.  Accordingly, Americare's malpractice claim accrued no later than July 2010, and is, therefore, time-barred.

For the foregoing reasons, we **AFFIRM** the district court's decision.